## BOWEN v. VANCE et al.

No. 33638.   April 25, 1950.

Rehearing Denied May 23, 1950.

*218 P. 2d 628.*

Claude Briggs, of Oklahoma City, for plaintiff in error.

Robert J. White, of Russellville, Ark., and Sid White, of Oklahoma City, for defendant in error.

Kathryn Van Leuven, of Oklahoma City, for receiver and interveners.

O'NEAL, J. This is an appeal from a judgment of the district court of Oklahoma county in favor of certain interveners in a controversy growing out of an action to foreclose a materialman's lien.

By a partial judgment entered August 11, 1947, by agreement of the par-ties then before the court, reserving for future determination issues affecting certain parties, the rights of the mortgagee and the materialmen were adjudicated. That left only a controversy between plaintiff in error, Willie Mae Lain Bowen, William B. Vance, and H. B. King, receiver for Mutual Construction Company and mutual brokerage company, two copartnerships, in which Vance was one of the partners. The case as to the issue between the said last-named parties reserved for later hearing was set for trial on September 2, 1947. On that date, when the case was called for hearing Robert Scott Kessler and 19 others asked and obtained leave, over the objection of plaintiff in error, Willie Mae Lain Bowen, to intervene, setting up claims arising through transaction with Vance, Mutual Construction Company and Mutual Brokerage Company.

After an extended hearing on the issues as then joined, the trial court, after plaintiff in error had demurred to the evidence and the demurrer had been overruled, announced its findings of fact and conclusions of law. Thereafter the court entered judgment in accordance with the findings of fact and conclusions of law. Motion for new trial was overruled after the trial court made a slight modification of the judgment, and defendant Willie Mae Lain Bowen appeals.

The facts giving rise to the controversies here involved are quite complicated and for an understanding of the issues a somewhat extended preliminary statement is necessary.

It appears that for several years before 1946 Willie Mae Lain Bowen, herein referred to as plaintiff in error, was the owner of a tract of land described by metes and bounds about 330 feet east and west and about 984 feet north and south, then outside the corporate limits of the city of Oklahoma City lying just north of Northeast 23rd street and adjacent to and just west of Creston Hill addition. The property was ac-

quired by plaintiff in error prior to her marriage to Ray Bowen and after her marriage it was used and occupied as their homestead. A fire had destroyed the residence thereon but plaintiff in error continued to reside on the property as her homestead occupying a small temporary building.

Said tract of land was covered by a mortgage in favor of Selected Investments Corporation securing a loan of about $8,000. Sometime prior to 1946 plaintiff in error had entered into a contract with one W. T. Elsea to have the property surveyed into lots and blocks for the purpose of selling a portion thereof. They employed the county surveyor, E. D. Hill, to survey and plat the property into four blocks. Blocks 1, 2 and 3 were to be subdivided into lots about 50 feet in width. Block 4, lying just north of 23rd street, was not to be subdivided into lots. For this engineering work an obligation or indebtedness of $927 to E. D. Hill had been incurred which had not been paid. The plat prepared by Hill had not been filed with the county clerk. A suit had been commenced in the district court by E. D. Hill against W. T. Elsea and plaintiff in error to recover on said indebtedness. Such was the situation in June, 1946, when negotiations were begun between defendant, William B. Vance, and plaintiff in error, which resulted in the execution of a contract, dated July 10, 1946, looking to the completion of the work necessary to complete the plat and have same filed of record and looking to the sale of 32 lots in blocks 1, 2 and 3. It is out of this contract and transactions relating thereto that this litigation arose. The contract was between plaintiff in error, party of the first part, William B. Vance, party of the second part, and Vancil K. Greer, party of the third part, said party of the third part being a trust officer of the Selected Investments Corporation. The contract with all its provisions was submitted to, approved and agreed to by the Selected Investments Corporation. It covers some 15 typewritten pages, in the record, and is too long to set out in full herein. It was introduced in evidence and the pertinent parts thereof will be set forth.

Said contract, after designating the parties as above, contains a number of recitals to the effect that the party of the first part is the owner of the tract of land involved, describing it; that said land had theretofore been unplatted and constituted a portion of the homestead of the party of the first part; that the entire tract was encumbered by a mortgage in favor of the Selected Investments Corporation in the sum of $8,000 with interest at the rate of 8 per cent per annum; that it was found advisable and necessary to sell and dispose of a part of the land for the purpose of raising funds to pay off the mortgage indebtedness and to make improvements on the remaining portion thereof as the homestead of plaintiff in error; that in order to do so, it was agreed that the land could be disposed of to the best advantage by subdividing the same into lots and blocks for home sites and to constitute an addition to the city of Oklahoma City; that the property had theretofore been surveyed for platting and dedication in lots, blocks, streets, and alleys as an addition to Oklahoma City to be known and designated as "Lain Hills Addition" to the city of Oklahoma City; that in said survey and proposed plat there is identified 32 lots as building sites designated as lots 3 to 10, inclusive, in block 1, lots 1 to 12, inclusive, in block 2, and lots 1 to 12, inclusive, in block 3, as shown by a copy of a "blue print" map, or plat, attached to the contract; that all of said lots so described should be subject to sale and conveyance for the purposes above set out and upon the terms, provisions and conditions agreed to and set forth in the contract. Then follows the agreement of the parties set forth in twelve numbered paragraphs which are in part:

"First: Party of the first part is to execute and deliver to Vancil K. Greer,

138

as Trustee, title to the said above described portion of the lands owned by her, and said conveyance is, as a part of this contract, and for the considerations herein set forth executed and delivered as a part and parcel of this agreement, the said trustee to hold the said title solely as trustee for the benefit of the other parties hereto, and to convey the same in accordance herewith;

"Second: Party of the second part is to proceed without any delay, at his own expense and without cost to the other parties hereto, to complete all necessary surveys, preparation of completed plat, dedication deed and to procure the approval of the proper officers and file the same with the County Clerk of Oklahoma County, so that said land may be legally established as and for an addition to the City of Oklahoma City, and thereafter the said second party is, at his own expense, and without obligating the other parties hereto, shall cause all necessary additional surveying, engineering, preparation of plans and specifications for and shall lay, install and complete for use all necessary water and sewer lines, including mains, laterals, extentions and connections, and shall likewise at his own expense make all necessary surveys and shall prepare all plans and specifications for and shall do all proper and necessary grade and drainage work for the grading, draining and paving of the streets and in so doing shall use all dirt removed therefrom in making fills and in bringing to proper grade level any and all lots within the said area needing or requiring fill to bring the same to proper grade level, and, likewise shall utilize all dirt taken from other excess elevations to make dirt fills in or upon lots requiring surface elevation to bring the same to proper grade for improvement and for the laying of sewer, or other areas. It being understood that said second party in developing said tract shall not extend the paving, sewers and water lines beyond any lots which have been conveyed to said second party and that no liability therefore (sic) shall be created which would be a lien upon any of said lots not conveyed to and owned by said second party.

"It is also understood and agreed that said second party shall pay all obligations owing to E. D. Hill, an engineer and surveyor, for all work which he has done heretofore and which is now asserted by the said E. D. Hill in an action pending in the District Court of Oklahoma County, Oklahoma in a suit the style of which is E. D. Hill, Plaintiff, vs. Willie Mae Lain Bowen and W. T. Elsea, docketed in said Court as Cause No. 112,334, and shall forthwith procure the dismissal of the said suit with prejudice."

"Fourth: That second party, in his development of the area and the construction of improvements therein and thereon, shall begin the same on the east side where the said 'Lain Hills Addition' abutts upon the 'Creston Hills Addition' and shall therefrom extend the said improvement westward, extending sewer lines, water lines and street improvement westward as the work of development progresses and that no such water lines, sewer lines or street improvement construction shall ever be done in such manner and at such places as will encumber or jeopardize property with liens other than property the title to which has passed to second party as herein contemplated."

"Sixth: In the development work to be carried on by second party hereunder, and the construction of improvements upon any lot or lots, said second party is to protect first party and all real property not theretofore conveyed to said second party, from any and all lien claims, and, in case any such lien claims be, at any time asserted against any property the title to which has not vested in second party hereunder, same shall be and constitute grounds for forfeiture and/or receision (sic) which may immediately be exercised by first party, and thereafter second party shall have no further rights under this contract."

"Ninth: It is mutually agreed by the parties hereto that second party shall be entitled to execution and delivery of deed to him as grantee of any lot or lots upon payment of the purchase price consideration: that said second party will not commence improvements upon

any lot or lots until he has acquired title thereto and has paid the full consideration therefor; that the consideration is agreed to be in the sum of Five Hundred Dollars ($500.00) for each lot; that said consideration shall be paid by the said second party to Vancel K. Greet, (sic) Trustee, as third party hereto, and so long as any party of the lien of the Selected Investments Corporation remains unsatisfied, said consideration so paid to him by the second party, or so much thereof as may be necessary, shall be paid to the said Selected Investments Corporation to be credited upon the mortgage debt lien, and that after the said lien has been extinguished in full by payment of principal and interest due thereon, then and thereafter such consideration for the conveyance of lots shall be by the said third party paid to first party, or to her assigns. No conveyance shall ever be executed and delivered to second party unless and until the full consideration by him is paid to third party. . . ."

"Eleventh: It is further agreed that time is of material essence in this contract, and that said second party shall, within thirty days from the date of the execution of this contract, begin the actual work of construction of buildings for sale as homes or residences upon such lot or lots as shall be paid for by him prior to that time, and that such work of construction, including proper and necessary sewer lines, water lines and extensions thereof and street improvements as herein provided for shall be carried forward as herein contemplated all without interruption or delay, and when one building or group of buildings shall be completed others shall be started forthwith upon other lots paid for by him; that such work of improvement and building of residences or homes for sale to purchasers, and the improvements incident thereto shall be methodically carried on without delay until all lots herein identified shall have been thus improved and disposed of, the work of such improvement, as herein otherwise stated, to begin on the east side of the said addition and extend westward until all lots are thus improved. If said second party shall

at any time discontinue the purchase of lots or the work of construction of buildings for homes thereon for a period of sixty days, then, and in that event first party may, at her option declare this contract terminated and all rights of the said second party hereunder shall end. It is also agreed that eighteen months shall be the maximum time within which second party may be entitled to the purchase of lots hereunder, and that any and all lots not purchased and paid for by him by the expiration of the said period of eighteen months from the date hereof shall be relieved from the obligation of this contract, and said second party shall not thereafter, in any event, be entitled to conveyance of any lot or lots the title to which remains in third party as trustee, and such trustee, shall, thereupon, execute and deliver to said first party, or her successor or assigns, such conveyance or conveyances thereto."

No part of block 4 was to be subdivided into lots. Plaintiff in error conveyed the tract covered by the contract to Vancil K. Greer as trustee. The contract was executed, duly acknowledged, and filed for record in the office of the county clerk of Oklahoma county on July 26, 1946. Defendant Vance paid, or caused to be paid to E. D. Hill, the $927 claimed by him and Hill's suit in the district court was dismissed. But the plat was never completed and was not filed in the office of the county clerk. Thereafter, about August, . . . . , 1946, Vance delivered to Vancil K. Greer a check in the sum of $500 and requested a deed for lot 11 in block 3. Greer declined to issue the deed because the plat had not been filed in the office of the county clerk and called Vance's attention to the provisions of 11 O. S. 1941 §§511 to 521, inclusive, relating to platting townsites and additions, and particularly to section 519 which imposes a penalty of $10 per lot for any person to offer for sale or sell any lot in any town or city or in any addition to any town or city before all the requirements of the article shall have been complied with. Vance

left the check with Greer and promised to have the plat completed and filed, but never did so.

It appears that Vance had associated with him a partner or partners in the construction business, which partnership was doing business known as the "Mutual Construction Company". Vance also had associated with him other parties in a brokerage business which was doing business and known as the "Mutual Brokerage Company". About August ___, 1946, Vance, or Vance and his copartner, J. R. Roberts, commenced the construction of a building on that part of the land covered by the contract between Vance, plaintiff in error, and Greer, trustee, designated on the plat as lot 11, block 3, and another building on that part of the land designated on said plat as lot 12 in block 3.

Before either of said buildings was completed, Sam Rogers filed a materialman's statement wherein he stated that between the 20th day of September, 1946, and the 10th day of October, 1946, he furnished material of the value of $1,240.42 for the construction of said building under a contract with William B. Vance and J. R. Roberts, and that said materials were furnished and used in the construction of the building on premises owned by Willie Mae Lain Bowen, described by metes and bounds, the same as the land described in the contract between plaintiff in error, Vance, and Greer, claiming a lien on said buildings on all the land so described for the payment of said sum of $1,240.42.

November 26, 1946, claimant, Sam Rogers, commenced this action to foreclose said materialman's lien claim. William B. Vance and J. R. Roberts, doing business as Mutual Brokerage Company, Willie Mae Lain Bowen, and Selected Investments Corporation, were made parties defendant.

November 21, 1946, plaintiff in error served Vance with written notice of termination and forfeiture of the contract above mentioned.

December 24, 1946, plaintiff in error filed a "cross-petition" against codefendants, William B. Vance, J. R. Roberts, doing business as Mutual Brokerage Company. Therein she pleaded and set forth her contract with Vance and alleged that the only right ever acquired by Vance or Vance and Roberts was under and by virtue of that contract. She alleged the breach thereof by Vance in that he had commenced the construction of the buildings on said tract of land before paying for and obtaining a deed therefor as provided in said contract, and by undertaking to create obligations against said property. She then pleaded the termination or cancellation of said contract for the alleged breach thereof and alleged that whatever, if any, obligation Vance or Vance and Roberts had undertaken to create against said property the same were void and of no force and effect as against her and that all of said codefendants and all persons claiming or claiming by or through either of them were bound by the terms of said contract and had actual and constructive notice of its terms by reason of its having been placed of record in the office of the county clerk. She then alleged that she had been damaged by the breach of said contract by defendant Vance in the sum of not less than $5,000. She prayed for judgment against Vance and Roberts for said sum and for a decree terminating and canceling the contract, the contract rights under said contract, and for attorney's fee in the sum of $1,000.

The Oklahoma State Union of the Farmers' Educational and Co-Operative Union of America, generally known and designated as Oklahoma Farmers' Union, asked and obtained leave to in-

tervene. Said Farmers' Union set up a materialman's lien claim in the sum of $241.21 for material furnished for said building. It claimed a lien superior to all other liens, other than labor liens, and sought foreclosure thereof.

February 3, 1947, Selected Investments Corporation filed its answer and cross-petition, seeking foreclosure of its mortgage.

It appears that another action, No. 114,436, had been commenced in the district court of Oklahoma county, wherein Scott Kessler and others were plaintiffs, and Mutual Brokerage Company and Mutual Construction Company, doing business for Marvin Kent, Sam Mathis, and William B. Vance, were defendants, and that H. B. King had been appointed receiver for said defendants in said cause April 29, 1947. An order was entered making H. B. King the receiver for Mutual Construction Company, a party defendant in this action, and on May 13, 1947, H. B. King, receiver for Mutual Brokerage Company and Mutual Construction Company, filed an answer and cross-petition against Willie Mae Lain Bowen, wherein he claims a lien inferior to the lien of Selected Investments Corporation. He sought marshalling of the assets and to have sold first the property described in the contract between plaintiff in error, William B. Vance and Greer, other than lots 11 and 12, block 3. Therein he admits the execution of the contract between plaintiff in error and William B. Vance, and asserts that thereby Willie Mae Lain Bowen sold all of Lain Hills addition to William B. Vance, and further asserts that in said contract it was contemplated and specifically agreed that Vance might construct the improvements upon the lots and complete the same before paying the purchase price of the lots upon which same would be made. He specifically denied that the improvements had been placed on the premises without the knowledge and consent of Willie Mae Lain Bowen and alleged the truth to be that said improvements

were made with her knowledge and consent in accordance with the express provisions of the contract.

He then alleged breach of the contract by Willie Mae Lain Bowen in failing to co-operate with Vance in obtaining a deed and release of the Selected Investments Corporation mortgage as to the lot for which Vance had given Greer the check for $500. He sought judgment against Willie Mae Lain Bowen for the sum of $927 paid to Hill by Vance, $5,000 for labor and material placed in the two unfinished buildings and $9,000 for loss of profits on the sale of said lots for a total of $14,927, and $1,000 attorney's fee.

In his cross-petition against Selected Investments Corporation, King, as receiver, admitted that the lien of Selected Investments Corporation were superior to his claim, but alleged ample security aside from the two lots upon which the two improvements were placed. He sought marshalling of assets and an order directing the sale of the lots, other than the two lots upon which said improvements were constructed, before resorting to said two lots. However, he described the two lots which he reserved as lots 1 and 2 in block One, Lain Hills addition, instead of lots 11 and 12 in block 3.

May 19, 1947, there was entered an order authorizing A. K. Little and Byrne A. Bowman to file a petition in intervention and on said date said Little and Bowman filed their petition in intervention asserting a mortgage on the property covered by the contract between Willie Mae Lain Bowen and Vance, given to secure an indebtedness of $492.13 and $275 for attorney's fee. They alleged that their mortgage, dated March 10, 1940, was a first and prior lien on said property and prayed for foreclosure of same. Issues were joined by answers, replies, etc., as between all the above mentioned parties.

Willie Mae Lain Bowen was denying the lien or claim of every party as against her title, except Selected Investments Corporation, and was seek-

ing damages against William B. Vance for breach of contract.

With the issues thus joined, Willie Mae Lain Bowen, on July 1, 1947, filed an application for the appointment of a receiver to take charge of and have the authority to sell, either at public or private sale, all that part or portion of the real estate covered by Vance's contract. Therein she asserted that she was the owner in fee of the property involved; that the lien claim of plaintiff, Sam Rogers, entitled him, at most, to a lien against the improvements placed upon lots 11 and 12 in block 3; that the lien of Selected Investments Corporation is a valid and subsisting mortgage lien which can best be satisfied and paid through an immediate sale of the property in the platted area of blocks 1, 2 and 3, and that the lots in blocks 1, 2 and 3, if sold promptly and without delay, were of sufficient value to produce ample funds to satisfy and pay all valid claims and obligations asserted against said land in this action. She alleged that certain of the other parties had consented and would agree to the appointment of a receiver with power to sell, as above set forth, and convey title to such lots and perfect the platting and dedication of said property into lots, blocks, streets, etc. She suggested the name of Allan G. Swingle, a member of the bar, as a satisfactory person to be receiver. On the same day the application was filed the court entered an order appointing Allan G. Swingle receiver for that part of the property involved in this action. It was recited in the order that all of the parties were present in person or by attorney and had asserted no objections to such appointment. Therein it was ordered that the receiver should first proceed to the perfection of the platting and dedication of said property into lots, blocks and streets, in accordance with the surveys already made and the blueprint map or plat theretofore prepared by E. D. Hill and when legal requirements were met to file such dedication, map and plat in the proper office of the city of Oklahoma City and the county clerk of Oklahoma county; that the receiver then proceed to offer for sale and sell so much of said real property as might be necessary at such price as shall be determined to be the best obtainable and representing the value thereof and when an offer was received by the said receiver for the purchase of any part or portion of said property that the receiver forthwith report such offer to the court. It was further ordered that in offering said property for sale, the receiver should offer separately the lots designated as lots 11 and 12 in block 3 and to obtain a specific offer therefor applicable to the value of the lots and the improvements separately so that the value of the improvements might be separately determined and the proceeds therefrom be separately accounted for. The receiver accepted the appointment and qualified as required by the order. August 4, 1947, the receiver filed a preliminary report in which he stated that he had been unable to complete the platting and dedication of said property into lots and blocks because he had been advised that the property could not be dedicated until the outstanding claims against the property shall have been satisfied. He reported a bid in writing by O. J. (Jack) Miller, wherein the bidder offered to buy lots 11 and 12 in block 3 at a price of $1,550, and to buy the improvements thereon at a price of $3,600, and to buy all of lots 1 through 10 in block 3 for $7,750, which was at the rate of $775 per lot. The bid, however, was not unconditional. The bidder wanted included in the sale the north half of the east 100 feet of block 4 platted into four lots. Block 4 was not a part of the property covered by the contract between Willie Mae Lain Bowen and Vance, although it was included in the mortgage of the Selected Investments Corporation. Miller offered to pay for said proposed lots in block 4 the sum of $3,100, or $775 per lot. The bid was upon the further condition that

Willie Mae Lain Bowen, or the receiver, in case he has not been discharged, grant the bidder an option to purchase the remainder of the land which would be ten lots in block 1 and twelve lots in block 2, the price therefor to be $775 per lot and the option to be to purchase not less than one half block at any one time, the bidder, however, to lose said option if he should delay for more than nine months in purchasing all the lots in block 2, and more than 18 months in purchasing all the lots in block 1. The bid contained certain other conditions not necessary to mention and one further condition that Willie Mae Lain Bowen would be obligated to see to and arrange for the dedication of all the above mentioned and described lots so that block 4 as subdivided into lots and streets would be made a part of Lain Hills Addition.

Willie Mae Lain Bowen agreed to the conditions contained in said bid and agreed to put the four lots in block 4 in the sale by the receiver.

There was then filed in the cause an extended "stipulation of facts" which was signed by all the parties except Vance and H. B. King, receiver.

Said stipulation of facts were presented to the trial court and upon consideration thereof the court made findings to the effect that the issues involved as between plaintiffs and defendants and the interveners could and should be settled in accordance therewith, and that the issues as between defendant Vance and the cross-petition of Willie Mae Lain Bowen and the issues with reference to the claims of H. B. King, receiver, could be adjourned and trial thereof had at a later date. The court then upon consideration of the facts stipulated and agreed upon, made certain findings:

(1) That plaintiff, Sam Rogers, should have and recover judgment against William B. Vance and J. R. Roberts, doing business under the trade name of Mutual Brokerage Company for the sum of $1,240.42 principal and $53.98 accrued interest and establishing a lien on the improvements only constructed on lots 11 and 12, block 3 of the proposed Lain Acres (Hill) addition to the city of Oklahoma City, and $300 attorney's fees and that said improvements be ordered sold for the satisfaction of said lien. This was in accordance with paragraph 9 of the stipulation.

(2) That the mortgage lien of Selected Investments Corporation is a superior first mortgage lien against all of the property described in its answer and cross-petition and that there was then due and owing thereon the sum of $9,456.00 and that said Selected Investments Corporation was entitled to foreclosure of its mortgage lien, together with $400 attorney's fees. That was in accord with paragraph 11 of the stipulation of facts.

(3) That the interveners, A. K. Little and Byrne A. Bowman were entitled to a judgment against defendant, Willie Mae Lain Bowen in the sum of $650. That was in accord with paragraph 10 of the stipulation of facts.

(4) That based upon the return and report of A. C. Swingle, receiver in this action, and the consent of all other parties, including Willie Mae Lain Bowen, the authority and power of said receiver should be extended to and cover all the real estate involved herein and designated in the answer and cross-petition of Selected Investments Corporation.

(5) That the cause of action should be adjourned for trial of the issues between Willie Mae Lain Bowen and William B. Vance and as to the claim of H. B. King, receiver, until September 2, 1947. Judgment was entered according to findings 1, 2 and 3 above, and the cause is continued in accordance with findings 5.

But it was further ordered that the receiver, A. C. Swingle, accept the bid of O. J. Miller and proceed with the sale of the property in accordance with said offer.

Thereafter, on September 2, 1947, when the case was set for trial on the issues above stated and before any evidence was taken, Robert Scott Kessler and 19 others obtained leave to file and filed a petition in intervention in said cause. Said petition alleged, in substance, that said interveners are the parties plaintiff in cause No. 114,436, Robert Scott Kessler et al. v. Mutual Construction Company et al., a firm composed of William B. Vance and Sam Mathis, partners, in which interveners as trustant depositors in said companies are asking for judgment for their deposits and declarations as such trustants as preferred creditors; and that said cause was then pending and set for trial on September 22, 1947; that part of the assets of said defendant companies and William B. Vance et al., in cause No. 114,436, are assets in this cause for the reason that at the time their down payments were made in the Mutual Construction Company, and others, they were made to apply on the purchase price of homes on lots in the addition to Oklahoma City here involved and under the contract between Willie Mae Lain Bowen and William B. Vance; that in the case at bar, and after appointment of receiver for the Mutual Construction Company, and others, a second receiver was appointed for the purpose of selling the property upon which these interveners had made their deposits and in which they have some right, title and interest and to which they were not made parties; that said receiver has negotiated the sale of said property and has accepted a bid on said lots of $775 per lot; that the contract price under the option contract with William B. Vance was $500 per lot; that these interveners assert their right to all the proceeds paid or to be paid under the second receiver's sale, over and above $500 per lot, plus legal interest thereon; that such excess funds over and above $500 per lot, with accrued interest, are rightfully and lawfully the assets of the receivership in case No. 114,436, and subject to distribution to these interveners.

The prayer was for an order setting over to H. B. King, receiver, in case No. 114,436, all excess profits (proceeds) over and above the sale price of the lots in the contract between William B. Vance and Willie Mae Lain Bowen, the same to be held for the use and benefit of these interveners, and for such other relief as equity might afford.

It may be noted that the plea in intervention did not state how much, if any, each intervener deposited with the Mutual Construction Company et al., when such deposits were made, nor did it describe or set forth the particular lot selected by each intervener, nor what particular lots, as a whole, were selected by interveners.

Defendant and cross-petitioner, Willie Mae Lain Bowen, demurred to said petition in intervention. Said demurrer was overruled and exceptions saved to said ruling, as shown by the minutes of the court clerk. The case then went to trial on the issues as between Willie Mae Lain Bowen and Vance, and as to the issues raised by the cross-petition of H. B. King, receiver, and as to the issues raised by the plea of intervention of Robert Scott Kessler et al. After extended hearing thereof, wherein oral and documentary evidence covering some 385 typewritten pages in the record were introduced, the court entered a final judgment (1) allowing and sustaining the materialman's lien claim of Farmers' Educational and Co-Operative Union, in the sum of $241.23, together with $35 attorney's fee, and ordering same paid out of the $3,600 sale price of the improvements on said lots 11 and 12, block 3. (2) Allowing another lien claim asserted by Billington Lumber Company in the sum of $150 and ordering it paid out of the proceeds of the sale of the improvements on said lots 11 and 12, block 3. (3) Holding the contract between Willie Mae Lain Bowen and William B. Vance to be an option contract vesting in said Vance, his successors and assigns, the right to purchase and acquire title to any one or all of the lots comprising the area

and that all rights thereto were assignable as any other property right; that all rights acquired by William B. Vance under said contract were, in fact, transferred to and vested in the copartnerships composed of William B. Vance, Sam Mathis and Marvin Kent, doing business as Mutual Brokerage Company and Mutual Construction Company; said partnerships then being under the control of H. B. King, receiver, appointed in case No. 114,436, pending in the district court and that all rights, title and interest recoverable under said contract should go to said H. B. King, receiver, impressed with, and as a trust for the benefit of Robert Scott Kessler and the 19 other interveners. (4) That defendant and cross-petitioner, Willie Mae Lain Bowen, is not entitled to declare and establish a forfeiture of said contract with defendant, Vance, but her cross-petition should be treated as amended so as to state, and she is entitled to have established, a vendor's lien on the whole of the lands involved; that is, lots 3 to 10, inclusive, block 1, all of block 2 and all of block 3 in said Lain Hills addition, and to foreclosure of same to secure the contract price thereof in the sum of $16,000, with interest from December 24, 1946, and a further sum of $1,776.94 representing additional interest and attorney's fee on the mortgage lien of Selected Investments Corporation allowed in its judgment, together with the costs of this action, including costs and fees of the receiver, with a further sum of $1,000 attorney's fee in favor of Claud Briggs, her attorney. (5) It was further ordered, adjudged and decreed that the receiver, Allan C. Swingle, proceed to complete the sale and conveyance of said property as decreed by the former order in this case and apply the proceeds first received to the amount of $12,900 in satisfaction of the obligations established in the former order and judgment of the court rendered August 11, 1947.

Said judgment further directs the payment of all judgments allowed, the fees, costs, receiver's fees, etc., and "after satisfaction of all other obligations hereby established and judgments herein rendered, the balance then remaining in the hands or under control of such receiver Allan C. Swingle, be paid to H. B. King as Receiver for William B. Vance, Sam Mathis and Marvin R. Kent, copartners, doing business as Mutual Brokerage Company and as Mutual Construction Company, same to be by said H. B. King, Receiver, held as a trust fund for the benefit of the Interveners Robert Scott Kessler (et al., naming them) . . . as their interests and rights may be established by judgment in Action Number 114,436, pending in this Court, to which Defendant and Cross-petitioner excepts and exceptions are allowed."

After unsuccessful motion for new trial, Willie Mae Lain Bowen appeals, making William B. Vance, H. B. King, receiver for Mutual Brokerage Company and the Mutual Construction Company and Robert Scott Kessler and the 19 other interveners defendants in error.

The assignments of error are presented under four propositions. It is first asserted that the court erred in declining to hold that the contract between plaintiff in error, Willie Mae Lain Bowen, and defendant in error, Vance, vested in Vance no rights other than an option to purchase. The trial court in a journal entry filed September 25, 1947, did hold and declare that the contract between Willie Mae Lain Bowen, party of the first part, and William B. Vance, party of the second part, was an option contract vesting in said second party, his successors and assigns, the right to purchase and acquire title to any one or all of the lots comprising the area therein described. But the trial court, by an order entered November 21, 1947, modified the judgment so as to make it hold that said contract of July 10, 1946, was a contract vesting in said second party (Vance) his successors or assigns the right to purchase and acquire title to any one lot or all the lots in the area and that said contract was filed for record and recorded in

146

the office of the county clerk on the ———— day of July, 1946.

The trial court in so modifying the judgment did nothing more than follow in almost the same language the statement defining an option as stated in Anthis v. Sandlin, 149 Okla. 126, 299 P. 458. Therein it is said:

"An option is a contract by which the owner of property agrees that another shall have a right to buy it at a fixed price within a certain time. The owner does not sell the property, but sells the privilege to buy at the option of the other person. See McGregor v. Ireland (Kan.) 121 P. 358. An option conveys no title to the thing sold, but creates rights in personam, which may be again sold or assigned by the vendee. See Womack v. Coleman, 92 Minn. 328, 100 N. W. 9, 11."

It was there held:

"An option is a contract by which the owner of property agrees that another shall have a right to buy it at a fixed price within a certain time. The owner does not sell the property, but sells the privilege to buy at the option of the other person."

Authorities are cited from a number of states in support of the rule. The definition is in accord with 66 C. J. 486 and 488.

After providing that party of the first part, Willie Mae Lain Bowen, should execute and deliver to Vancil K. Greer, as trustee, title to that portion of the land covered by the contract, said contract sets forth a number of things Vance was to do and agreed to do as a consideration for the option. In paragraph 9 it provides that second party (Vance) should be entitled to execution and delivery of a deed to him as grantee of any lot, or lots, upon payment of the purchase price consideration, with a proviso that second party (Vance) should not commence any improvements on any lot, or lots, until he had acquired title thereto and paid the full purchase consideration therefor; the consideration agreed upon is then fixed and set at $500 for each lot.

Then after providing how the sale price of each lot should be applied by Vancil K. Greer, the trustee, the contract further provides that "no conveyance shall ever be executed and delivered to second party until the full consideration by him is paid to third party" (Greer, trustee).

Section 1 of the contract provides:

"It is also agreed that eighteen months shall be the maximum time within which second party (Vance) may be entitled to the purchase of lots hereunder, and that any and all lots not purchased and paid for by him by the expiration of said period of eighteen months from date hereof shall be released from the obligation of this contract, and said second party shall not thereafter, in any event, be entitled to conveyance of any lot or lots, the title to which remains in third party as Trustee . . . ."

All parties connected with the case, with the possible exception of Vance, agreed that the contract was an option. All the parties who joined in the stipulation of facts agreed that under the contract Vance obligated himself not to begin the construction of any improvements upon any part of the land without first acquiring title thereto and paying the full purchase price. The 20 interveners in their intervening petition alleged that the contract price "under the option contract with William B. Vance was $500.00 per lot". H. B. King, receiver, alleged in his answer that Willie Mae Lain Bowen failed to comply with the contract in not furnishing release of mortgage and deed upon tender of the sum of $500 in the exercise of the option in said contract. The contract here under consideration gave Vance a mere option to purchase or take title to one or all the lots within the area covered thereby at any time within 18 months. He was not obliged to purchase any lot. The contract gave him no right or authority whatever to enter into a contract, or agreement, with any third party which would give third party any right, title, or interest in or to any lot, or lots, unless and

until Vance had exercised his option to purchase and had purchased and paid for such lot, or lots.

An option must be supported by a consideration separate and apart from the proposed purchase price.

"It is essential to the existence of a valid option that it be supported by a valuable consideration . . . The consideration for the option is a thing apart from the consideration for the sale of the land." 55 Am. Jur. 502.

There was ample consideration for the option.

There was much said at the trial as to whose fault it was that the plat was not filed. E. D. Hill was a witness and testified that he was unable to get the plat filed because he could not get any abstracter to certify that the land involved was free from encumbrances, or liens. However, he never did present the plat to the county clerk. Vance never did explain or give any excuse for not having the plat filed. In fact, Vance, though represented by counsel, did not testify, and so far as he is concerned there is no excuse whatever shown for his not complying with that part of his contract. It is said that he was unable to get the plat filed for the same reason that Hill testified that he was unable to get it filed. However, counsel have not pointed out or cited any law which required a certificate of an abstracter showing land about to be platted to be free from encumbrances.

It is next contended that the court erred in holding that H. B. King, receiver, and intervener herein, was entitled to receive any part of the proceeds of the sale of the property, for the reason that there was no evidence to support such finding and judgment. It is not made clear in the pleadings of H. B. King, receiver, or the 20 interveners, upon what theory or facts they, or either of them, based their claim as against Willie Mae Lain Bowen. It appears from the evidence, however, that before the action was commenced, Vance, or some of his associates through their mutual brokerage company, had entered into contracts with each of the 20 interveners for the construction or erection of a new house on some one of the lots in said addition. The contracts are not exactly alike, but a fair sample of the contracts is that of Warren G. Hurst, which is as follows:

"This agreement made and entered into this 25th day of September, 1946 between Mutual Construction Company of Oklahoma City, Oklahoma party of the first part and Warren G. Hurst of Oklahoma City, Oklahoma party of the second part: Witnesseth:

"1. The party of the first part being the developer of that tract of land known as Lane Hills Addition hereby agrees to erect a new house upon any lot or lots of the party of the second parts' own choosing within the above mentioned tract.

"2. For which the said party of the second part hereby agrees to deposit Five Hundred Dollars ($500.00) as a down payment. The sum is to apply upon the full purchase price of the property.

"3. The said party of the first part further agrees to construct this house according to the plans and specifications as chosen by the party of the second part from Howard Tatum, architect.

"4. That upon the default of the party of the first part the said sum of Five Hundred Dollars ($500.00) will be refunded to the party of the second part, and

"5. If the said party of the second part fails or defaults in any way the performance of the stipulations of this agreement Thirty-five ($35.00) of the said sum of Five Hundred Dollars ($500.00) shall be forfeited to the said party of the first part as liquidated damages.

"6. It is agreed, as between the parties, that the foregoing agreement is not to be construed as a building contract, but it is understood and mutually agreed that the parties shall enter into a construction contract at a later date

which is to meet the approval of both parties involved.

"Signed   Warren G. Hurst
"Oweata Hurst

"Mutual Construction Company
"By M. E. Drake
"Paid $500.00 Deposit October 25, 1946
J. R. Roberts"

Some of the contracts specified the lot and block upon which the house was to be erected and some of them set forth the price of the house and lot. Some of the contracts named William R. Vance, Sam Mathis and Marvin Kent as composing a Mutual Brokerage Company. The amounts paid down or deposited by the several interveners range from $100 to $1,000. One of the contracts, that of Scott Kessler, did not specify any down payment. One contract, that of Melvin E. Drake, appears to have been misplaced and is not set forth in the case-made. The total amount of deposits shown by the several contracts set forth in the case-made is about $10,000. One of the contracts, that of Carl L. Kothman, does not appear to have been signed by the Mutual Construction Company, or by any one purporting to represent Vance or either of said partnerships. That contract calls for the erection of a house on lots 9 and 10, block 5, West Point addition. It is not even within land covered by the contract involved herein. There is no evidence whatever to connect Willie Mae Lain Bowen with any of the alleged contracts or to show that she knew anything about them, or that she ever authorized Vance or any of his associates or sales agents, or any other person, to sign said contracts on her behalf, or consent that the same might be signed.

There is nothing whatever in the contract between William B. Vance, Willie Mae Lain Bowen, and Greer, Trustee, which would authorize Vance or any of his associates, assignees, or agents, to execute such contracts as to any of said lots unless or until Vance had paid the trustee the $500 purchase price

thereof and received the deed conveying same to Vance. Admittedly that was never done. The contract expressly forbade Vance from in any way encumbering any of said lots until he had paid the price thereof and obtained a deed therefor.

Regardless of whose fault it was that the plat was not completed and filed with the county clerk, neither Vance nor any person claiming under him could acquire any interest whatever in and to any of the lots until Vance had paid the trustee and obtained a deed therefor.

The record shows that the trial court, in effect, held that Willie Mae Lain Bowen was estopped to declare a forfeiture of and termination of the contract between Vance, Willie Mae Lain Bowen and Greer, trustee, for the reason that from about August, 1946, until November 19, 1946, she knew or must have known that Vance was constructing the buildings on said lots 11 and 12, block 3, for the reason that she lived on block 4, about 300 feet from where the buildings were being constructed. She testified that she knew nothing about said buildings being constructed until a few days before she served notice on Vance of a cancellation of the contract. There is some contention that estoppel is an affirmative defense and must be pleaded before it can be enforced and that there was no sufficient plea of estoppel in this case. Aside from whether or not there was a sufficient plea of estoppel or whether the pleadings could be treated as amended so as to include that plea, the evidence is not sufficient to sustain estoppel against her had it been properly pleaded. Conceding that Willie Mae Lain Bowen did know that the buildings were being constructed by Vance as found by the court, she would have been entitled to assume that Vance had complied with this contract and had paid for and obtained a deed to said lots before commencing improvements thereon. There would be no presumption that Vance had violated his contract.

Therefore, Willie Mae Lain Bowen was not estopped to cancel the contract at the time she did so. To withhold from her any part of the sale price of the lot, other than the $500 per lot as called for by the contract, and apply the same on any claim of the 20 interveners would be to take her property and apply it to the payment of an obligation owing by Vance and his associates, or copartners, to the interveners for which and to whom she was in no way liable.

The judgment of the trial court is affirmed in all respects, except that part thereof which holds and directs that after satisfaction of all other obligations established by the judgment rendered, the balance then remaining in the hands of or under the control of the receiver, Allan G. Swingle, be paid to H. B. King, as receiver for William B. Vance, Sam Mathis, and Marvin R. Kent, copartners .doing business as Mutual Brokerage Company and as Mutual Construction Company, to be held as a trust fund for the benefit of interveners Robert Scott Kessler and others. That part of the judgment is reversed and the cause is remanded with the direction that the trial court enter judgment that such balance so remaining in the hands of the receiver herein be paid to defendant and cross-petitioner, Willie Mae Lain Bowen.

DAVISON, C.J., and CORN, GIBSON, LUTTRELL, HALLEY, and JOHNSON, JJ., concur.