**WEBER v. TEXAS CO.**

No. 7806.

Circuit Court of Appeals, Fifth Circuit.

May 12, 1936.

Rehearing Denied June 5, 1936.

W. G. Banks, of Houston, Tex., and Alvin O. King, of Lake Charles, La., for appellant.

T. J. Lawhon, Jr., of Houston, Tex., for appellee.

Before FOSTER, and SIBLEY, Circuit Judges, and STRUM, District Judge.

STRUM, District Judge.

Texas Company, as plaintiff below, sued to enforce performance by the defendant, W. P. Weber, of certain option provisions of a Texas oil lease.

Natali and wife, owners of the land, on October 22, 1928, leased the same to H. C. Aiken for the purpose of prospecting and drilling for oil and gas. The lease, recorded November 30, 1928, ran for five years, called "the primary term," and "as long thereafter as either oil or gas is or can be produced from any well on said land."

The lease reserved to the lessor a royalty of one-eighth of the oil and gas produced from the demised lands, or, at the option of the lessee, the market value of such oil and gas, the sum of $69 on account of the royalties being paid-in cash at the execution of the lease. The lease also contained the following option, from which this suit arose: "The lessee is hereby given the option of purchasing all or any part of said royalty rights from the lessor at the best bona fide price offered by responsible third parties when and if offered for sale or transfer by lessor."

Plaintiff, Texas Company, by assignment dated April 23, 1930, recorded May 8, 1930, succeeded to all the rights of the lessee Aiken in that part of the demised lands here involved. Some time prior to April 11, 1933, plaintiff commenced drilling, bringing in a producing well April 24, 1933. On April 13, 1933, the lessors Natali and wife, for a consideration of $7,000 cash, conveyed to defendant Weber one-fourth of the one-eighth royalty reserved to said lessors in that part of the demised lands here involved. The conveyance, recorded April 14, 1933, recites: "It is understood and agreed that this assignment is subject to an oil, gas and mineral lease, and to all of the terms and provisions thereof, covering said tract of land now held by the Texas Company, but covers and includes one-fourth of all royalties payable to grantors (Natali and wife) under the terms thereof."

The lease from Natali and wife to Aiken was part of Weber's chain of title to the one-fourth of Natali's royalty rights, therein reserved. Weber had both actual knowledge and constructive notice of its provisions.

Plaintiff, Texas Company, Aiken's assignee, had neither notice nor knowledge of the conveyance from Natali and wife to defendant, Weber, until April 27, 1933, recording of the conveyance from Natali to Weber not being constructive notice to plaintiff because such conveyance is not within the chain of title under which plaintiff claims. White v. McGregor, 92 Tex. 556, 50 S.W. 564, 71 Am.St.Rep. 875. Neither had plaintiff notice or knowledge of the consideration for said conveyance from Natali to Weber until May 4, 1933. On May 12, 1933, plaintiff advised defendant, Weber, of its election to exercise its option to purchase the royalty interest conveyed to him by Natali, tendered a consideration of $7,000, and demanded a conveyance, which Weber refused. This suit for specific performance followed, culminating in a decree adverse to Weber, from which he appeals. —

Appellant Weber contends that since the royalty eighth remained owned by the lessor as realty [Evans v. Mills (C.C.A.) 67 F.(2d) 840; Sheffield v. Hogg, 124 Tex. 290, 77 S.W.(2d) 1021, 1024, 80 S. W.(2d) 741], and since the lease extends to the heirs, personal representatives, successors, and assigns of the lessee, and continues in force "as long as either oil or gas is or can be produced from any well on said land," and since the option to purchase the lessor's royalty eighth is coextensive with the life of the lease, the option has a prospective operation beyond the limit fixed by the rule against perpetuities [Cf. Clarke v. Clarke, 121 Tex. 165, 46 S.W.(2d) 658] and is therefore void [Anderson v. Menefee (Tex.Civ.App.) 174 S.W. 904; Bigelow v. Cady, 171 Ill. 229, 48 N.E. 974, 63 Am.St. Rep. 230].

The rule against perpetuities springs from considerations of public policy. The underlying reason for and purpose of the rule is to avoid fettering real property with future interests dependent upon contingencies unduly remote which isolate the property and exclude it from commerce and development for long periods of time, thus working an indirect restraint upon alienation, which is regarded at common law as a public evil. London Ry. Co. v. Gomm (Eng.) 20 Ch.Div. 562; Barton v. Thaw, 246 Pa. 348, 92 A. 312, Ann.Cas.1916D, 570; 32 Tex.Jur. "Perpetuities and Restraints," § 4, p. 830; 3 Thompson on Real Property, p. 724; 1 Tiffany on Real Property (2d Ed.) p. 592; 48 C.J. 934; 21 R.C.L. 288.

The option under consideration is within neither the purpose of nor the reason for the rule. This is not an exclusive option to the lessee to buy at a fixed price which may be exercised at some remote time beyond the limit of the rule against perpetuities, meanwhile forestalling alienation. The option simply gives the lessee the prior right to take the lessor's royalty interest at the same price the lessor could secure from another purchaser whenever the lessor desires to sell. It amounts to no more than a continuing and preferred right to buy at the market price whenever the lessor desires to sell. This does not restrain free alienation by the lessor. He may sell at any time, but must afford the lessee the prior right to buy. The lessee cannot prevent a sale. His sole right is to accept or reject as a preferred purchaser when the lessor is ready to sell. The option is therefore not objectionable as a perpetuity.

To establish that the option here involved is fatally indefinite as to the selling price, appellant relies upon Fogg v. Price, 145 Mass. 513, 14 N.E. 741. The covenant there involved, however, is much less definite than the covenant here sought to be enforced. It was there pointed out as to that covenant that "the contract certainly does not contemplate a sale to somebody else as a mode of ascertaining the price at which the lessor will sell to the lessee." The contrary is true here.

In argument, appellant hypothesizes several situations of fact in an effort to demonstrate that the questioned option is unconscionable and in effect a restraint upon alienation even if it does not violate the rule against perpetuities. He asserts, for example, that no bona fide offer for the reserved royalty rights could be secured if the purchaser must yield his bargain to an option at the latter's election; that if the leasehold interest, which has here passed to Texas Company, was split up by assignment to plural assignees, each with equal optionee rights as to the purchase of the royalty interest, it would render a sale by the lessor impossible in practice and thus restrain alienation. Again, that if the owner-lessor desires to sell his land and has a purchaser willing to purchase the same as an entirety, less the seven-eighths mineral rights conveyed,

but could obtain no offer for his reserved one-eighth royalty rights as a severed estate, no means are provided whereby the owner in these circumstances may force either the exercise or destruction of the option. But none of these questions are presented by the facts in this case. We, of course, limit the decision to the facts now presented, and pretermit other questions until they arise.

Moreover, these objections are urged, not by the lessor-owner who would be the sufferer from the hypothesized situations, but by Weber who is the lessor's assignee of part of the royalty interest, and who offers the same solely as a defense against compliance with a lease and option subject to which he purchased his interest. Having expressly purchased subject to the lease, Weber cannot complain of its burdens, nor assert them vicariously for his assignor, the lessor, who is not complaining.

The District Court held on the facts here presented that the lease from Natali to Aiken, now held by plaintiff, Texas Company, is not inequitable nor contrary to public policy, but, on the contrary, is valid and enforceable; that plaintiff within a reasonable time exercised its option to purchase the royalty rights conveyed by Natali to Weber; and that there was no material increase in the intrinsic value of such royalty rights between April 27, 1933, when plaintiff first received notice of the conveyance from Natali to Weber, and May 12, 1933, when plaintiff elected to exercise its option to purchase. The evidence supports these conclusions. Other contentions urged by appellant demonstrate no reversible error.

Affirmed.