Doris Day MELCHER et al., Plaintiffs
in Error,

v.

Beulah CAMP et al., Defendants in Error.

No. 41506.

Supreme Court of Oklahoma.

Nov. 28, 1967.

H. B. Watson, Jr., Tulsa, for plaintiffs in error.

Goins & Smith, by Jack H. Smith, Ardmore, for defendants in error.

HODGES, Justice.

The controversy in this appeal is between the lessors and two of the fractional assignees of the original lessee of an oil and gas mining lease covering the upper 5500 feet of certain described property in Stephens County. A provision in the lease makes it subject to the terms and provisions of a separate agreement between the parties to the lease. The period of the lease was for one year and "so long thereafter as oil and gas, or either of them is produced from said land by the lessee." The evidence shows

that oil was being produced from the land at the time of the trial. No question is raised as to the rights of the original lessee under the separate agreement inuring to the benefit of the assignee defendants who have appealed.

The separate agreement between the parties to the lease granted to the lessee (2nd party) all rights of the ordinary lessee under an oil and gas lease covering all the mineral rights under the property described to the depth of 5500 feet. It provided for exploration and development, for time limits therefor, and for conditions of termination and surrender, of the property leased. It further provided for reservation to the lessors of the oil, gas and other minerals and mineral rights below 5500 feet with the rights of ingress and egress for drilling and producing the formations thereunder. The last provision of the separate agreement is as follows:

"The parties further mutually agree that in the event first parties shall at any time have an opportunity to lease the oil, gas and other minerals and mineral rights below 5500 feet, second party is to be given a five day option of acquiring such lease himself on the same terms and conditions offered to first parties."

The only provision for avoiding the contract in question appears to be upon the drilling of a dry hole as the first test well on the premises above the 5500 feet depth, and since no question of the operation of that provision is raised, it is presumed the contingency is past.

The effect and application of the above quoted provision are determinative of this appeal.

The four plaintiffs filed an action to quiet their undivided fractional interests in the title to oil, gas and other minerals in formations more than 5500 feet below the surface of the described land. They alleged the existence of, and subsequently introduced, the lease and separate agreement referred to above, and alleged the existence of some claim of right, title, interest or estate in and to the subject property by each of the named defendants. Specific allegations were made that the above quoted provision of the agreement was violative of the statutes of Oklahoma, specifically 60 O.S. 1961, § 175.47, and that the claims of the defendants were, therefore, of no force and effect. They, also, alleged that the claims of the defendants constitute a cloud upon plaintiffs' title to the property. The trial court sustained plaintiffs' position and quieted their title to the property. Defendants have appealed.

Before we can properly consider the effect of the appropriate rule of law upon the provision above quoted, we must analyze the agreement itself. It relates to the exploration of formations below 5500 feet. The only connections of the lease between the parties to the upper 5500 feet to the lease contemplated below 5500 feet are that the premises are vertically contiguous and each requires use of a portion of the surface for exploration. The contemplated lease, if and when it shall become extant, will not be a renewal of the one which is now in force and effect. It will be another lease for exploration of different premises.

The provision gives to the second party (defendants' assignor) the right to a five day option to acquire a lease on the area involved upon terms and conditions presently unknown, and which may never be ascertained, at a time which may never occur. The right of defendants to receipt of the option contemplated by the provision will be current only "in the event * * *" of a contingency which may never occur. In that the option is in futuro and contemplates its grant to, and an opportunity of exercise by second party prior to conveyance of a lease to any other party, it constitutes a condition precedent.

It should be noted that if the provision involved is valid, any conveyance by first parties to a lessee other than second party would be subject to avoidance. Notice to any possible lessee of the prior right of second party is made to appear by the recording of the separate agreement in Stephens County.

By the terms of the provision first parties fettered their right to sell the lease to whomever they might choose by the agreement to permit second party first to accept a lease upon terms which might be offered by another. The necessity of making an offer to second party creates a condition precedent to a valid conveyance and to that extent the provision involved differs from the terms of an ordinary option to purchase which does not prevent or fetter conveyance by the owner subject to it. A conveyance by first parties of an oil and gas lease in the face of this provision would, ipso facto, breach its terms.

This type "option" has been classified as a right of preemption, and has been considered by many courts.

The parties and the trial court treated plaintiffs' allegation of the invalidity of the questioned provision in the separate agreement as controlled by 60 O.S.1961, § 175.47. The parties on appeal have referred only to that section of our statutes in their briefs, but each has characterized the section as being declarative of the common law rule against perpetuities. Although we do not accept such premise as a precise statement of the law, we shall consider the question raised in light of the applicable law relating to perpetuities.

In addition to 60 O.S.1961, § 175.47, § 31 of the same title and Art. 2, § 32, of the Oklahoma Constitution bear upon the general law of perpetuities. Those provisions are as follows:

60 O.S.1961, § 175.47:

"The absolute power of alienation of real and personal property, or either of them, shall not be suspended by any limitations or conditions whatever for a longer period than during the continuance of a life or lives of the beneficiaries in being at the creation of the estate and twenty-one years thereafter, except when property is given, granted, bequeathed, or devised to a charitable use or to literary, educational, scientific, religious, or charitable corporations for their sole use and benefit, or to any cemetery corporation, society or association, nor shall this Section apply to gifts, grants, devises, or bequests absolute, limited, or in trust, for the advancement of medical science to an incorporated state society of physicians and surgeons."

60 O.S.1961, § 31:

"The absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition, except as provided in section 6608."

Article 2, § 32, Oklahoma Constitution:

"Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this State."

 That section 175.47, above, relates to trusts only seems obvious upon analysis. First, it is contained in, and was enacted as a part of, the Oklahoma Trust Act of 1941, 60 O.S.1961, § 175.1 et seq. Secondly, the life or lives in being referred to in the section as the standard for computation of the permissible time of suspension of alienation is "of the beneficiaries". Beneficiaries are, historically, persons who benefit from the existence of trusts. Especially is "beneficiaries" used in that light when the reference to them is contained in an Act relating to the creation and administration of trusts. The only language in this section which might raise doubt as to the certainty of its coverage is that which denominates certain exceptions. However, when the exceptions are considered in the light of the other language, " * * * nor shall this Section apply to * * *", the exceptions appear almost certainly to have been included for clarity as an enumeration of transfers and items to which "this section" was specifically intended not to have application.

Section 31, above, was enacted by the First Legislative Assembly of the Oklahoma Territory in 1890. It was adopted from the Comp.Laws, Dak., 1887. **The**

section was repealed by omission from the Statutes of Oklahoma (Terr.), 1893. It was omitted from the Compiled Laws of Oklahoma, 1909. It was re-enacted by inclusion in the Revised Laws of Oklahoma, 1910, a statutory compilation adopted by the Legislature, and by virtue of its placement in the chapter denominated, "Estate in Real Property", it relates only to real property interests.

It does not appear to us that the enactment of the Oklahoma Trust Act of 1941, including § 175.47, either by its "repealer" section or by substitution, repealed § 31, except to the extent that § 31 formerly applied to the creation and administration of trusts now covered by the act. As to the creation and administration of such trusts, § 175.47 repealed § 31, and is the governing statute therefor relating to suspension of the power of alienation. Creek Co. v. Robinson, 114 Okl. 163, 245 P. 584, 586; In re Layman's Estate, 208 Okl. 174, 254 P.2d 784; State ex rel. Williamson v. Empire Oil Corporation, Okl., 353 P.2d 130, 134; and Poafpybitty v. Skelly Oil Company, Okl., 394 P.2d 515, 519.

It is to be noted that 60 O.S.1961, §§ 31 and 175.47 both refer only to the "suspension" of the "absolute power of alienation", and that only the constitutional provision refers to "perpetuities".

In our view this appeal can and should be decided upon the application of the common law rule against perpetuities in its classical meaning, if it is effective in this State, and we will therefore pass to that consideration, delaying analysis of the associated rules relating to suspension or restriction of alienation to such time as it may be necessary for the determination of a controversy. By such delay we do not imply that one or more of the associated rules could not be determinative of this appeal.

The most universally accepted short definition of the common law rule against perpetuities (and one which is adequate for our consideration in this appeal), is contained in Gray, The Rule Against Perpetuities (4th ed.) 191. It is:

"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."

In Phillips v. Chambers, 174 Okl. 407, 51 P.2d 303, we acknowledged the existence of the rule against perpetuities, citing not only the constitutional provision, but also § 31, above referred to, and other statutory provisions of this State.

In McLaughlin v. Yingling, 90 Okl. 159, 213 P. 552, citing only the constitutional provision in pertinent part as follows:

"Perpetuities * * * are contrary to the genius of a free government, and shall never be allowed."

We acknowledged and applied the common law rule against perpetuities virtually in the form above stated, citing with approval the holdings of other courts and comments of text writers that:

"The rule against perpetuities is not a rule of construction, but a positive mandate of law, to be obeyed irrespective of the question of intention."

and

"Apart from a resort to lives in being as the standard for measuring the period of time for the postponement of the vesting of a future estate, the only definite period permitted by the rule against perpetuities is a term not exceeding 21 years."

There is no doubt but that in McLaughlin v. Yingling, supra, when we said:

"It seems clear that the statute, supra, is declaratory of the rule at common law, * * *,"

we had reference to the constitutional provision, Art. 2, § 32, Oklahoma Constitution, and were writing about the rule against perpetuities. This conclusion is inescapable for the reason that we had previously quoted Art. 2, § 32, Oklahoma Constitution, and the only legislative enactment to which we had previously made reference was § 8410, Revised Laws 1910 (84 O.S.1961, § 180) which is the statutory definition of a condition precedent in a will.

The text writers who have considered the application of the common law rule against perpetuities in this State uniformly agree that it is a part of our law, although they are not in absolute accord as to its genesis. Leach, Perpetuities in a Nutshell, 51 Harv. L.Rev. 638 (1938); Browder, Perpetuities in Oklahoma, 6 Okl.L.Rev. 183 (1955).

A provision in the California Constitution, Art. 20, § 9, which is not unlike our own provision, has consistently been interpreted by the California Courts to be an enactment of the common law rule against perpetuities. Haggarty v. City of Oakland, 161 Cal.App.2d 407, 326 P.2d 957, 66 A.L.R. 2d 718; In re Estate of Sahlender, 89 Cal. App.2d 329, 201 P.2d 69; Dallapi v. Campbell, 45 Cal.App.2d 541, 114 P.2d 646; and Victory Oil Co. v. Hancock Oil Co., 125 Cal.App.2d 222, 270 P.2d 604. The California provision is, "No perpetuities shall be allowed except for eleemosynary purposes."

The meaning intended in referring to "perpetuities" by the framers of our Constitution is difficult to imagine unless it related to the common law rule against perpetuities.

■ We, therefore, find the common law rule against perpetuities extant in this State from the ratification of Art. 2, § 32, Oklahoma Constitution.

Having determined that the common law rule against perpetuities has application in this State, the principal general questions which we must now decide are:

1. Is the provision in the separate agreement, which we have described as determinative of this appeal, within the operational gamut of the rule against perpetuities?

2. If the first question is determined affirmatively, does the provision violate the rule?

■ The rule against perpetuities is a rule of property and merely personal contracts are not subject to the rule. This is stated in 70 C.J.S. Perpetuities §. 10, p. 586, as follows:

"The rule against perpetuities is one of property only, and has no application to mere personal contracts which do not create or transfer any right of property. Where, however, a contract creates an interest in property which could, except for the rule, be enforced by a decree for specific performance, such interest is subject to the rule."

We move now to a determination of whether the questioned provision transfers or creates "an interest in property." In this connection we must consider the subject matter of the provision, which is a contingent "five day option to acquire" an oil and gas lease. We thus need to determine whether an oil and gas lease is a "right of property" before we consider the effect of the option, its priority, and scope.

70 C.J.S. Perpetuities § 10, p. 585, sets forth the general rule regarding the nature of property to which the rule is applicable, as follows:

"The rule against perpetuities is applicable alike to real and personal property, including terms for years and other chattel interests, and to both legal and equitable interests therein, however created."

From our considerable research of the authorities regarding property classifications to which the rule against perpetuities applies, inclusion of personal property as well as real property within the scope of the rule is compatible with both the reason for the rule and the English and American cases which have considered personal property in the absence of statutory limitations, especially where there is a relationship between the personal property and some real property interest.

■ That leases fall within the rule requiring estates to vest within the prescribed period of the rule against perpetuities is well settled, Haggerty v. City of Oakland, 161 Cal.App.2d 407, 326 P.2d 957, 66 A.L.R. 2d 718, and have been the subject of inquiry in connection with remoteness in vesting since Sanders v. Cornish (1631) Cro.Car. 230, 79 Eng.Reprint 801. See Gibbons v.

Summers (1681) 3 Lev. 22, 83 Eng.Reprint 557. In Hope v. Gloucester (1855) 7 De. GM & G 647, 44 Eng.Reprint 252, a contract or covenant to execute a lease on demand made is invalid under the perpetuity rule where, consistently with the provisions, the demand might be made at a time beyond the perpetuity period. The annotation following the A.L.R.2d report of Haggerty v. City of Oakland, supra, which begins at 66 A.L.R.2d 733, contains the editorial conclusion which we consider an accurate one. It is:

"So a provision for a future lease which will not, or may not, vest in interest within the period of the perpetuity rule is condemned by that rule."

It is noted that Haggerty v. City of Oakland, supra, has been subjected to modification by the Supreme Court of California in Wong v. DiGrazia, 60 Cal.2d 525, 35 Cal.Rptr. 241, 386 P.2d 817. However, the modification of Haggerty, supra, relates to an issue not present in this appeal. Wong v. DiGrazia, supra, in reliance upon what is there referred to as the almost unanimous agreement of courts and scholars, softens the application of the rule by construction in holding that a document does not violate the rule against perpetuities, if by its terms, all contingent interests must vest *or fail* within the period of the rule. Inasmuch as the questioned provision here involved contains no terms, either express or implied, which require that either the activation or exercise of the option must fail or vest within the period of the rule, we do nothing more here than note the softening of the application of the rule in California. In the case before this court, activation of the requirement to give defendants an option arises "at any time * * *." Although Wong, supra, by construction in application of the rule to the facts of that case held the particular contract for a lease in future did not violate the rule, it fortifies our holding that a contractual provision for the creation of such a lease in futuro, falls within the scope of the rule.

Since the case of Hitt v. Henderson, 112 Okl. 194, 240 P. 745, our decisions have uniformly held that an ordinary oil and gas lease conveys an interest in the land covered thereby. Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 3 A.L.R. 352; Nicholson Corporation v. Ferguson, 114 Okl. 16, 243 P. 195; Franklin v. Margay Oil Corporation, 194 Okl. 519, 153 P.2d 486; Ptak v. City of Oklahoma City, 204 Okl. 336, 229 P.2d 567; and Canning v. Bennett, 206 Okl. 675, 245 P.2d 1149. Hitt v. Henderson, supra, and the cases preceding it were explained by the court in Nicholson Corporation v. Ferguson, supra, although without reference to many of the cases apparently holding as does Hitt v. Henderson, supra, that an oil and gas lease did not convey an interest or estate in the land. The reasoning in Nicholson Corporation, supra, concludes that the confusion created by the prior cases resulted from the court's discussion of factors in the cases which were unnecessary to the decisions, or what we subsequently entitle vicarious additions to the issues of the cases. There the court, to support what appears to be a change of opinion, cited with approval Heller v. Dailey, 28 Ind.App. 555, 63 N.E. 490, as follows:

"The right to take minerals (oil and gas) from the land constitutes an interest in the land."

The court then determined that the measure of damages for breach of a covenant of an oil and gas lease, was fixed by the statutory provision for " * * * breach * * * in a grant of an estate in real property, * *." 23 O.S.1961, § 25, and accepted the definition of an estate contained in Bouvier's law dictionary, as follows:

"The degree, quantity, nature and extent of interest which a person has in real property is usually referred to as an estate. It varies from absolute ownership down to naked possession."

The case of Dallapi v. Campbell, supra, which cites and comments upon Tiffany on Real Property, 2nd section 179, sheds light upon the interest in property necessary

to invoke the rule against perpetuities. The court there, quoting from Estate of McCray, 204 Cal. 399, 268 P. 647, pronounces the rule as follows:

" * * * 'as applied to interests in land, (the rule) may be stated as follows: Any limitation or provision, the purpose or possible effect of which is to cause an estate to commence in the future, is invalid if, as a result thereof, an estate may commence more than twenty-one years after a life or lives in being.' "

Dallapi v. Campbell, supra, also is authority for the proposition that an ordinary oil and gas lease is "a present estate, an interest in the land". The controversy in Dallapi v. Campbell, supra, arose from a reservation in a deed of the right to lease the conveyed premises for oil and gas exploration and development which was unlimited by its terms as to the time for exercising the right. The California Court applied the rule against perpetuities and held the reservation invalid for the reason that an estate in the property (an oil and gas lease) could be created to vest beyond the period allowed by the rule.

We hold that a contract for an ordinary oil and gas lease to vest in futuro creates such an interest in real property as is sufficient to invoke the rule against perpetuities as a rule of property.

Our independent research causes us to pause here to consider the option feature of the questioned provision. We have held that an option to purchase real property conveys no interest in the real property. Anthis v. Sandlin, 149 Okl. 126, 299 P. 458; and Bowen v. Vance, 203 Okl. 136, 218 P.2d 628. As our analysis has already caused us to observe, the option contained in the questioned provision is really more than an ordinary contingent option. It may properly be denominated a preemptive option or right, dependent for activation upon an occurrence which may never happen, and is, itself, a condition precedent to the grant of an oil and gas lease to anyone other than the optionee (his heirs, or assigns). Although the difference between the ordinary option and the option contained in the questioned provision could be pursued to a determinative point in this appeal, it is, in our view, neither necessary nor advisable so to limit our decision in this appeal because of the possible confusion which could result from such a singular basis for our decision here.

A careful analysis of the cases wherein we have stated the principle that an option to purchase conveys only rights in personam or personal rights and no interest in the property, reveals that the issues in those cases involved title, ownership, or right to possession. The facets of "interest in land" are so numerous that any attempt to set forth each or all of them would be an herculean task. Not even the text writers have purported to establish a list of those facets, except as each or some relate to a particular problem or question.

While application of analogous rules are often used to implement knotty legal questions, each holding is, theoretically, confined to the issues denominated by the court rendering the decision. Thus, vicarious additions to the principal holdings of the courts' decisions should be carefully scrutinized before applying them to different issues and legal questions. So it is with the application of our holdings in Anthis v. Sandlin, supra, and Bowen v. Vance, supra, where in each case we were concerned with the option as a transfer of title or ownership of property by or to an optionee prior to his acceptance of the terms of the option.

Our decision in Anthis v. Sandlin, supra, is not without importance in this case, however. We held that the owner-optionor could sell the fee, and that the purchaser at such sale took the fee subject to the option (of course, subject to notice of its existence). The effect, therefore, of a recorded option to purchase is that it becomes an interest which runs with the land.

As succinct a statement of the necessary interest in property to invoke the rule as is likely to be found is contained in the discussion of the Rule against Perpetuities in

the English Text, Dart's Treatises, Vendors and Purchasers of Real Estate, 7th Edition, Published by Stevens and Sons, Limited, London, 1905, Vol. 1, p. 783, as follows:

"Any covenant, the benefit or burden of which runs with the land, which gives a present right to an interest which may arise at a period beyond the legal limits is void, * * *."

The necessary "interest in property" for invocation of the rule against perpetuities is set forth in Henderson v. Bell, 173 P. 1124, as follows:

"It follows that the Buchanans (optionees) and those holding under them, either as assignees or heirs, would hold *a right to obtain an interest in the property* running for an indefinite period of time. That right would be held in violation of the rule against perpetuities." (Emphasis ours.)

We are aware of no case wherein an option to purchase, or to repurchase, or a preemptive right to purchase or repurchase has been considered in connection with the rule against perpetuities, which has been decided on the basis that the "interest in the property" transferred or created by such agreement, option or preemptive right was insufficient to invoke the operation of the rule. We conclude that the interest sufficient to invoke the operation of the rule against perpetuities is created and transferred in the ordinary option. It is "the right to obtain an interest", or, more precisely, "a present right to an interest which may arise in the future." An option to acquire an interest in property, either contingent or for a specific term, must be exercised within the period specified by the rule against perpetuities, so that the interest in the property to which the option relates will vest within the limited period of the rule. An option which, by its own terms, must not necessarily be exercised within that period or which is contingent upon a happening which may never occur or which may occur beyond the specified period,

violates the rule against perpetuities and is void from its creation.

Defendants cite Weber v. Texas Co., 5 Cir., 83 F.2d 807, as determinative of the issues in this appeal. There the court refused to apply the rule against perpetuities to a preemptive option in an oil and gas lease, which would allow the lessee to purchase the lessor's royalty interest at such price as the lessor could obtain from some responsible 3rd party if he should ever offer the royalty for sale. We pause to note here that the option in the Weber case related to the same property under one lease, while the option under consideration in the present case relates to separate leases and different properties. However, we choose not to base our decision in this case upon this factual distinction. Weber, supra, seems to have applied a widely recognized exception to the rule against perpetuities. An option to purchase property is generally held to be subject to the rule against perpetuities. The exception to the rule, advanced by Leach in "Perpetuities in a Nutshell", supra, which has found many disciples in the American cases, is that when the option to purchase the fee is contained in the lease and is exercisable within the term of the leasehold interest impressed upon the property, it is not subject to the rule against perpetuities. We do not, however, find the basis for allowing the application of this exception in the facts of the Weber case, supra, or in the present case. We decline to follow Weber, supra, for the reason that the optionees' right to the interest in the property in either case could vest beyond the period permissible under the rule against perpetuities. A provision creating such rights, being violative of the rule against perpetuities, is void.

For cases in which the preemptive option, contingent for its activation upon a happening which may never occur, has been determined to be violative of the rule and, thus, void, see Morgan v. Griffith Realty Co., 10 Cir., 192 F.2d 597; Henderson v. Bell,

supra, and Roberts v. Jones, 307 Mass. 504, 30 N.E.2d 392, 132 A.L.R. 663.

The judgment of the trial court is affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS and LAVENDER, JJ., concur.

McINERNEY, J., concurs in result.

BLACKBIRD, J., dissents.