**PRODUCERS OIL COMPANY, an Oklahoma Corporation, Plaintiff,**

v.

**Theodore GORE and Shirley K. Bernstein, Defendants.**

**No. 77–35–C.**

United States District Court,
E. D. Oklahoma.

Sept. 30, 1977.

Gail R. Runnels, Frederic Dorwart, J. Michael Medina, Holliman, Langholz, Runnels & Dorwart, Tulsa, Okl., for plaintiff.

John S. Athens, J. Denny Moffett, Conner, Winters, Ballaine, Barry & McGowen, Tulsa, Okl., for defendants.

## ORDER DISMISSING ACTION

MORRIS, Chief Judge.

This action is before the court on defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6) Federal Rules of Civil Procedure. In connection with the motion the parties have filed several briefs setting forth their respective positions.

Plaintiff, as a successor in interest to the operator under four operating agreements dated October 1, 1956, seeks specific performance of a preemptive option clause contained in those agreements. Three of the agreements are attached to the complaint as Exhibits A, B and C. The fourth agreement, allegedly identical to the other three, is said to be missing. The clause plaintiff seeks to enforce provides as follows:

15. Should any Non-Operator desire to sell the interest, or any part thereof, owned by such Non-Operator in the oil and gas lease, or leases, hereinabove described, such Non-Operator shall promptly give written notice to Operator with full information concerning such proposed sale, including the name and address of the prospective purchaser (who must be ready, willing and able to purchase), the purchase price and all other terms of the offer. Operator shall then have an optional prior right for a period of ten days after receipt of the notice to purchase on the same terms and conditions, the interest which such Non-Operator proposes to sell. However, there shall be no preferential right to purchase in those cases where any Non-Operator wishes to mortgage its interest or to dispose of its interest by merger, reorganization, consolidation, sale of all of its assets, or sale or transfer of its interest to any

company in which such party owns a majority of the stock, or to a trust or trusts created by such party. Nothing herein contained shall be construed as relieving the party offering such assignment or transfer of any obligations or liability which may have attached or accrued prior to the effective date of such assignment or which may be accruing on the effective date of any such transfer or assignment.

Defendants contend that the complaint fails to state a claim because (1) the agreements are unenforceable as violative of the rule against perpetuities; (2) the agreements are terminable at will; (3) the agreements are nonassignable since they created nondelegable personal duties on the part of the operator; and (4) plaintiff has failed to allege facts showing that it succeeded to the rights of the operator named in the agreements.

■ Since the agreements are attached to the complaint and incorporated by reference therein they are a part thereof for all purposes, Rule 10(c) Federal Rules of Civil Procedure, and can be considered on a motion to dismiss for failure to state a claim. *O'Brien v. Di Grazia*, 544 F.2d 543, 545 n. 1 (1st Cir. 1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977); *Schnell v. City of Chicago*, 407 F.2d 1084, 1085 (7th Cir. 1969); *Mengel Co. v. Nashville Paper Products & Specialty Workers Union, No. 513*, 221 F.2d 644, 647 (6th Cir. 1955); *Ford v. Jones*, 372 F.Supp. 1187, 1188 (E.D.Ky.1974); *Framlau Corp. v. Dembling*, 360 F.Supp. 806, 809 n. 1 (E.D.Pa.1973); *cf. Olpin v. Ideal National Insurance Co.*, 419 F.2d 1250, 1255 (10th Cir. 1969), *cert. denied*, 397 U.S. 1074, 90 S.Ct. 1522, 25 L.Ed.2d 809 (1970). Since these exhibits do not constitute extraneous material under Rule 12(b) the court will consider them for purposes of ruling on the motion to dismiss, and conversion of the motion to dismiss into one for summary judgment under Rule 56 is therefore not mandated under Rule 12(b). *See Torres v. First State Bank*, 550 F.2d 1255, 1257 (10th Cir. 1977); *Adams v. Campbell County School District*, 483 F.2d 1351, 1353 (10th Cir. 1973); 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1366, at 679–80 & ns. 66, 67 (1969).

■ Defendants' contention that the complaint fails to state a claim because it does not allege facts in support of plaintiff's allegation that it is the successor in interest to Producers Pipe & Supply Company is without merit. Under Rule 8(a) Federal Rules of Civil Procedure evidentiary facts need not be alleged in the complaint. *Dry Creek Lodge, Inc. v. United States*, 515 F.2d 926, 931 (10th Cir. 1975); *Templeton v. Atchison, T. & S. F. Ry.*, 7 F.R.D. 116, 117 (W.D.Mo.1946). Since with respect to the successor in interest allegation the court cannot say that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir. 1975), defendants' motion must be denied insofar as it is based on that ground.

■ Defendants' contention that the agreements imposed personal nondelegable duties upon the operator and are therefore not assignable is equally without merit. An examination of the agreements, *see* 15 O.S. §§ 152–55 (1971), reveals that it was the contracting parties' intention that the contracts be assignable. Paragraphs 15 and 16 grant a right of first refusal or a preemptive option in case of sale of any interest in the oil and gas leases on the part of the operator and nonoperator. Paragraph 17 makes the agreement binding "upon the parties hereto, their respective heirs, personal representatives, successors and assigns." As a general rule, the use in a contract of the latter terms " 'indicates that it was the intention of the parties that the contract should be assignable.' " *Earth Products Co. v. Oklahoma City*, 441 P.2d 399, 405 (Okl.1968). Here, as in *Earth Products*, the duties to be performed "do not involve that degree of trust and confidence which is singularly personal to [Producers Pipe & Supply Company], as might be the selection of an artist or author whose

skills and talents are unique." *Id.* at 404. The motion is denied insofar as it is based on this ground.

■ Defendants next contend that the agreements are terminable at will since they contain no provision regarding duration or termination. Ordinarily, operating agreements contain a provision concerning the duration of the agreement, which may provide for a term of years or, customarily, for a fee simple determinable. 6 H. Williams & C. Meyers, *Oil and Gas Law* § 921.16 (1975).

If no period of duration is specified in a contract, and none can be inferred from its nature and subject matter, the law infers that the parties intended such agreement to be terminable at the pleasure of either party upon reasonable notice. If, however, a period of duration can be fairly implied from the nature of the contract, its subject matter, and the relationship of the parties, the contract is not terminable at the pleasure of either party and the court will give effect to the manifest intent of the parties.

*Miller v. Miller,* 134 F.2d 583, 588 (10th Cir.), *cert. denied,* 320 U.S. 744, 64 S.Ct. 46, 88 L.Ed. 441 (1943). It certainly cannot be said that the identity of the subject matter of the agreements was left for future determination. Although not explicitly stated, it is clearly inferred that the duration or term of the operating agreements was for the life of the oil and gas leases which were the subject of the agreements. *Arkansas Valley Town & Land Co. v. Atchison, T. & S. F. Ry.,* 49 Okl. 282, 299, 151 P. 1028, 1033 (1915) is therefore not controlling here. It follows that the motion must be denied insofar as it is based on the ground that the agreements were terminable at will.

Defendants' final contention is that the right of first refusal or preemptive option clause violates the rule against perpetuities and is therefore void and unenforceable. Familiar to all law students, and especially to those in the Future Interests classroom, is the classic statement of the rule by John Chipman Gray: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." 191 Gray, *The Rule Against Perpetuities* (4th ed. 1942). The Supreme Court of Oklahoma applied the rule in *Melcher v. Camp,* 435 P.2d 107 (Okl.1967). In that case the lessors executed an oil and gas lease to lessee covering the minerals down to a depth of 5500 feet. They also entered into a separate recorded agreement relating to the lease and to the minerals below the 5500 foot level. It provided in part as follows:

The parties further mutually agree that in the event first parties shall at any time have an opportunity to lease the oil, gas and other minerals and mineral rights below 5500 feet, second party is to be given a five day option of acquiring such lease himself on the same terms and conditions offered to first parties.

435 P.2d at 109. The Supreme Court of Oklahoma found that the provision violated the rule against perpetuities and was therefore void. The court reasoned:

We hold that a contract for an ordinary oil and gas lease to vest in futuro creates such an interest in real property as is sufficient to invoke the rule against perpetuities as a rule of property.

Our independent research causes us to pause here to consider the option feature of the questioned provision. We have held that an option to purchase real property conveys no interest in the real property. *Anthis v. Sandlin,* 149 Okl. 126, 299 P. 458; and *Bowen v. Vance,* 203 Okl. 136, 218 P.2d 628. As our analysis has already caused us to observe, the option contained in the questioned provision is really more than an ordinary contingent option. It may properly be denominated a preemptive option or right, dependent for activation upon an occurrence which may never happen, and is, itself, a condition precedent to the grant of an oil and gas lease to anyone other than the optionee (his heirs, or assigns). Although the difference between the ordinary option and the option contained in the questioned provision could be pursued to a determinative point in this appeal, it is, in

our view, neither necessary nor advisable so to limit our decision in this appeal because of the possible confusion which could result from such a singular basis for our decision here.

A careful analysis of the cases wherein we have stated the principle that an option to purchase conveys only rights in personam or personal rights and no interest in the property, reveals that the issues in those cases involved title, ownership, or right to possession. The facets of "interest in land" are so numerous that any attempt to set forth each or all of them would be an herculean task. Not even the text writers have purported to establish a list of those facets, except as each or some relate to a particular problem or question.

While application of analogous rules are often used to implement knotty legal questions, each holding is, theoretically, confined to the issues denominated by the court rendering the decision. Thus, vicarious additions to the principal holdings of the courts' decisions should be carefully scrutinized before applying them to different issues and legal questions. So it is with the application of our holdings in *Anthis v. Sandlin*, supra, and *Bowen v. Vance*, supra, where in each case we were concerned with the option as a transfer of title or ownership of property by or to an optionee prior to his acceptance of the terms of the option.

Our decision in *Anthis v. Sandlin*, supra, is not without importance in this case, however. We held that the owner-optionor could sell the fee, and that the purchaser at such sale took the fee subject to the option (of course, subject to notice of its existence). The effect, therefore, of a recorded option to purchase is that it becomes an interest which runs with the land.

As succinct a statement of the necessary interest in property to invoke the rule as is likely to be found is contained in the discussion of the Rule against Perpetuities in the English Text, Dart's Treatises, Vendors and Purchasers of Real Estate, 7th Edition, Published by Stevens and Sons, Limited, London, 1905, Vol. 1, p. 783, as follows:

> "Any covenant, the benefit or burden of which runs with the land, which gives a present right to an interest which may arise at a period beyond the legal limits is void, * * *."

The necessary "interest in property" for invocation of the rule against perpetuities is set forth in *Henderson v. Bell*, 103 Kan. 422, 173 P. 1124, as follows:

> "It follows that the Buchanans (optionees) and those holding under them, either as assignees or heirs, would hold a *right to obtain an interest in the property* running for an indefinite period of time. That right would be held in violation of the rule against perpetuities." (Emphasis ours.)

We are aware of no case wherein an option to purchase, or to repurchase has been considered in connection with the rule against perpetuities, which has been decided on the basis that the "interest in the property" transferred or created by such agreement, option or preemptive right was insufficient to invoke the operation of the rule. We conclude that the interest sufficient to invoke the operation of the rule against perpetuities is created and transferred in the ordinary option. It is "the right to obtain an interest", or, more precisely, "a present right to an interest which may arise in the future." An option to acquire an interest in property, either contingent or for a specific term, must be exercised within the period specified by the rule against perpetuities, so that the interest in the property to which the option relates will vest within the limited period of the rule. An option which, by its own terms, must not necessarily be exercised within that period or which is contingent upon a happening which may never occur or which may occur beyond the specified period, violates the rule against perpetuities and is void from its creation.

435 P.2d at 114–15. *Accord, Morgan v. Griffith Realty Co.*, 192 F.2d 597 (10th Cir. 1951), *cert. denied*, 343 U.S. 934, 72 S.Ct.

770, 96 L.Ed. 1342 (1952); *Cities Service Oil Co. v. Sohio Petroleum Co.*, 345 F.Supp. 28 (W.D.Okl.1972).

▆▆▆ Plaintiff attempts to distinguish *Melcher* on the ground that the agreement there was between a fee owner and an oil and gas lessee covering interests not subject to the lease while the instant case involves a right of refusal between two oil and gas lessees engaged in the joint development, production and sale of oil and gas from the same lands. Plaintiff's argument was anticipated by the court in *Melcher*, when it stated:

> Defendants cite *Weber v. Texas Co.*, 5 Cir., 83 F.2d 807, as determinative of the issues in this appeal. There the court refused to apply the rule against perpetuities to a preemptive option in an oil and gas lease, which would allow the lessee to purchase the lessor's royalty interest at such price as the lessor could obtain from some responsible 3rd party if he should ever offer the royalty for sale. *We pause to note here that the option in the Weber case related to the same property under one lease, while the option under consideration in the present case relates to separate leases and different properties. However, we choose not to base our decision in this case upon this factual distinction. Weber,* supra, seems to have applied a widely recognized exception to the rule against perpetuities. An option to purchase property is generally held to be subject to the rule against perpetuities. The exception to the rule, advanced by Leach in "Perpetuities in a Nutshell", supra, which has found many disciples in the American cases, is that when the option to purchase the fee is contained in the lease and is exercisable within the term of the leasehold interest impressed upon the property, it is not subject to the

rule against perpetuities. We do not, however, find the basis for allowing the application of this exception in the facts of the *Weber* case, supra, or in the present case. We decline to follow *Weber*, supra, for the reason that the optionees' right to the interest in the property in either case could vest beyond the period permissible under the rule against perpetuities. A provision creating such rights, being violative of the rule against perpetuities, is void.

> For cases in which the preemptive option, contingent for its activation upon a happening which may never occur, has been determined to be violative of the rule and, thus, void, see *Morgan v. Griffith Realty Co.*, 10 Cir., 192 F.2d 597; *Henderson v. Bell,* supra, and *Roberts v. Jones*, 307 Mass. 504, 30 N.E.2d 392, 132 A.L.R. 663.

435 P.2d 115–16 (emphasis added). Plaintiff urges *Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61 (10th Cir.), *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957), upon the court. The Tenth Circuit there held, however, that the interest granted vested immediately and that the option provision, giving only the right to a progressive utilization of the possessory enjoyment, did not violate the Oklahoma rule against perpetuities. 248 F.2d at 70–71.

The court is of the strong view that the rule against perpetuities should not apply to oil and gas operating agreements. From its inception in 1682, this court-made rule of law,[1] the genius of English judges, was designed to further alienability and to prevent the tying up of property within the family line for generation on generation.[2] It could not have been intended to apply, it should not apply and no worthwhile social or economic purpose is served by applying it

---

1. *Morgan v. Griffith Realty Co.*, 192 F.2d 597, 599 (10th Cir. 1951).

2. Simes, 33 Public Policy and the Dead Hand (1955). The rule was first proclaimed in the *Duke of Norfolks* case where Lord Chancellor Nottingham stated:

   A perpetuity is the settlement of an estate or an interest in tail, with such remainders expectant upon it, as are in no sort in the power of the tenant in tail to dock by any recovery or assignment, but such remainders must continue as perpetual clogs upon the estate . . . and they are against the reason and policy of the law, and therefore not to be endured. 3 Cha.Cas. 1 (1682); 3 Cha.Cas. 54 (1685).

to this common, frequent and useful type of oil and gas transaction.[3] The provision in question does not clog alienation. And, no doubt thousands of operating agreements, identical or similar in terms to those here involved, which predate the Oklahoma cy pres reform statute of 1971, run afoul of the rule. However, in view of what appears to be an unequivocal pronouncement by the Oklahoma Supreme Court to the effect that the rule should so apply this court considers itself bound. This is so, even though the Oklahoma legislature in 1971 determined that interests otherwise void under the rule shall no longer be invalidated but shall be reformed or construed within the limits of the rule. 60 Okl.Stat. §§ 75–78 (1971).

Plaintiff urges the court to reform the agreements pursuant to the above statute. Section 78 provides, however, that the

act shall apply to inter vivos instruments and wills taking effect after the act becomes effective, and to appointments made after the act becomes effective, including appointments by inter vivos instruments or wills under powers created before the act becomes effective.

It is thus clear that the act has prospective application only and the court cannot in good conscience classify the option as a power of appointment so as to make the statute applicable to the agreements under consideration. Since the act took effect on October 1, 1971 and the agreements were entered into on October 1, 1956 the reformation act cannot be applied as to them. *Stoltz, Wagner & Brown v. Duncan*, 417 F.Supp. 552 (W.D.Okl.1976), does not help plaintiff's cause since the instruments there involved took effect several years after the effective date of the reformation act. *Id.* at 556. Nor can the court disregard the clear legislative mandate of prospective application of the act with respect to inter vivos instruments by applying the cy pres doctrine to the option clause in question. Plaintiff cites *Francis v. Superior Oil Co.*, 102 F.2d 732 (10th Cir. 1939), in support of his contention that the cy pres doctrine ought to be applied in the case at bar. The court held in *Francis*, however, that the lease took effect at once subject to certain restrictions and was not void as to the time at which the interest created by the contract would begin. *Id.* at 735.

Since the preemptive option clause pursuant to which plaintiff seeks relief in this action violates the rule against perpetuities, as interpreted by the Oklahoma Supreme Court, and is therefore void, and since the agreements cannot be reformed under 60 Okl.Stat. §§ 75–78 (1971), the court must conclude that the action should be and it hereby is dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) Federal Rules of Civil Procedure. This disposition renders moot defendants' motions for protective order and stay of discovery.

**3.** When, however, the Rule is transposed from its original setting and is placed among property interests almost unknown until the turn of this century, it must be justified by new conditions before being permitted to annihilate the considered transactions of landowners and businessmen. In the words of Professor Leach again: "Excessively long family settlements were the threat which produced the Rule; and the period of perpetuities was tailored to fit the needs of family gift transactions. To derive from a rule thus motivated a general concept applicable to commercial transactions is a step of doubtful wisdom. Lives in being have no significance in commercial transactions, nor has the period of twenty-one years."

2 H. Williams & C. Meyers, *Oil and Gas Law* § 325 (1975).