**PRODUCERS OIL COMPANY,**
Appellant-Plaintiff,

v.

**Theodore GORE and Shirley K. Bern-
stein, Appellees-Defendants.**

No. 54519.

Supreme Court of Oklahoma.

April 15, 1980.

Rehearing Denied May 19, 1980.

Holliman, Langholz, Runnels & Dorwart, Rosenstein, Fist & Ringold, Tulsa, for appellant-plaintiff; Frederic Dorwart, J. Michael Medina, and A. F. Ringold, Tulsa, of counsel.

Conner, Winters, Ballaine, Barry & McGowen, Tulsa, by John S. Athens, J. Denny Moffett and Douglas L. Inhofe, Tulsa, for appellees-defendants.

DOOLIN, Justice:

Producers Oil Company (Operator) is successor in interest to certain operating agreements covering oil and gas leases in Carter County, Oklahoma. Theodore Gore (Non-Operator) is the owner of an undivided ⅙ working interest in the leases covered by the agreements. The agreements, executed in 1956, contained the following provision:

15. "Should any Non-Operator desire to sell the interest, or any part thereof, owned by such Non-Operator in the oil and gas lease, or leases, hereinabove described, such Non-Operator shall promptly give written notice to Operator with full information concerning such proposed sale, including the name and address of the prospective purchaser (who must be ready, willing and able to purchase), the purchase price and all other terms of the offer. *Operator shall then have an optional prior right for a period of ten days after receipt of the notice to purchase on the same terms and conditions*, the interest which such Non-Operator proposes to sell. However, there shall be no preferential right to purchase in those cases where any Non-Operator wishes to mortgage its interest or to dispose of its interest by merger, reorganization, consolidation, sale of all of its assets, or sale or transfer of its interest to any company in which such party owns a majority of the stock, or to a trust or trusts created by such party. Nothing herein contained shall be construed as relieving the party offering such assignment or transfer of any obligations or liability which may have attached or accrued prior to the effective date of such assignment or which may be accruing on the effective date of any such transfer or assignment." (Emphasis supplied).

Paragraph 16 of the same agreement gave Non-Operator an identical right of first refusal of the Operator's interest.

In July of 1976, Non-Operator attempted to assign his interest to Shirley Bernstein without first offering it to Operator under the agreement. Operator brought an action in the Eastern District United States District Court seeking specific performance of this provision of the agreements, naming Non-Operator and Bernstein as defendants. The district court held the provision was void as violative of the common law rule against perpetuities and dismissed the action. Upon consideration of the appeal, the Tenth Circuit Court of Appeals certified the following questions of Oklahoma law to this court:

(1) Does the Oklahoma Rule Against Perpetuities apply to the interest created by the preemptive option provisions of the oil and gas lease operating agreements described below?

(2) If the answer to the first question be in the affirmative, then, would it be within the power of a court in Oklahoma to reform the described provisions, either pursuant to statutory authority, 60 O.S.A. §§ 75–78, or under common law cy pres powers, so as to save them from invalidity under the Rule Against Perpetuities?

Because we find the Oklahoma rule against perpetuities does not apply to contractual preemptive options in operating agreements under oil and gas leases and thus answer the first question in the negative, we find it unnecessary to answer the second.

While preemptive options or rights of first refusal are analytically similar to ordinary options to purchase, they are distinguishable for the purpose of this appeal. A preemption differs from an ordinary option; an option creates in the optionee a power to compel the owner of property to sell it at a

stipulated price whether or not he is willing to sell; a preemption, or right of first refusal, does not give the preemptioner the power to compel the owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property· first to the person entitled to the preemption at a stipulated price, or as is the case here, at a price the Non-Operator is willing to sell to a third party. Upon receiving notice of the offer, the preemptioner may elect whether he will buy. If he decides not to buy, then the owner of the property may sell to anyone at his price.[1]

■ Unlike an option, under a preemption, an owner may elect to sell at any time he may choose and alienation is not hindered if no set price is made a part of the preemption. Such type of preemptive rights are generally held not to be restraints on alienation.[2]

■ In contrast to rules against restraints on alienation, the rule against perpetuities, although aimed at preventing restrictions on alienation, is directed toward *duration* of the rights rather than toward absolute restraints. Thus slightly different considerations are involved.

■ As stated in *Melcher v. Camp*, 435 P.2d 107 (Okl.1967) the most universally accepted definition of the common law rule against perpetuities states "no interest [in property] is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Rights with no ascertainable duration are void. This rule concerns rights of property only, and does not affect the making of contracts.[3] If Operator's and Non-Operators' rights under the preemptive provision do not create property rights but are merely contractual, the rule would not apply.

■ Whether oil and gas leases create interests in property was answered in *Melcher v. Camp, supra*. Although an operating agreement is strictly contractual in nature, the preemptive rights included therein are rights to oil and gas leases and under *Melcher* an ordinary oil and gas lease conveys an interest in the land covered thereby. Accordingly the rule against perpetuities must be taken into consideration in determining the validity of the preemption.

The present case was originally heard in the United States District Court and was decided under Oklahoma law based on *Melcher*. In his decision, *Producers Oil Company v. Gore*, 437 F.Supp. 737, 742 (E.D.Okl.1977) the judge stated:

"The court is of the strong view that the rule against perpetuities should not apply to oil and gas operating agreements. From its inception in 1682, this court made rule of law, the genius of English judges, was designed to further alienability and to prevent the tying up of property within the family line for generation on generation. It could not have intended to apply it, it should not apply and no worthwhile social or economic purpose is served by applying it to this common, frequent and useful type of oil and gas transaction. The provision in question does not clog alienation."

We agree with this philosophy. Mineral leases and their accompanying operating agreements have built in duration. Oil and gas production cannot last indefinitely and rights are always terminable. As stated above, the provision for preemptive rights is not a restraint on alienation and can last only as long as the agreement and the lease itself continues.

Despite the trial judge's legal bent, he felt constrained to apply the rule to the

1. VI American Law of Property § 26.64; *Melcher v. Camp*, 435 P.2d 107, 116 (Okl.1967).

2. Perpetuities—Preemptive Rights to Realty, 40 A.L.R.3d § 9(c)(d); also see 60 O.S.1971, § 175.47; 60 O.S.1979 Supp. § 31; *Foster v. Bullard*, 496 S.W.2d 724, 735 (Tex.Civ.App. 1973).

3. 61 Am.Jur.2d Perpetuities and Restraints on Alienation § 42 (1972); VI American Law of Property §§ 26.66, 26.67; *Keogh v. Peck*, 316 Ill. 318, 147 N.E. 266 (1925)); *Weber v. Texas Co.*, 83 F.2d 807 (5th Cir. 1936) cert. den. 299 U.S. 561, 57 S.Ct. 23, 81 L.Ed. 413.

operating agreements believing *Melcher v. Camp, supra,* so dictated. With this we do not agree.

The controversy in *Melcher* was between lessors and lessees in an oil and gas lease covering the *upper* 5,500 feet of the land in question. A separate agreement between the parties contained the following provision:

> "The parties further mutually agree that in the event first parties shall at any time have an opportunity to lease the oil, gas and other minerals and mineral rights below 5500 feet, second party is to be given a five day option of acquiring such lease himself on the same terms and conditions offered to first parties."

Lessors under the original lease filed suit to quiet title to the oil, gas and other minerals *below* 5,500 feet claiming this agreement was void. Because the provision created an open ended preemptive option to acquire a *new* lease of a different formation unconnected to the original lease upon unknown terms and conditions, this court held it violated the rule against perpetuities. The right to lease the lower 5,500 feet would not vest within the time limits of the rule and thus was void.

The circumstances and agreement in *Melcher* are obviously distinguishable from those in the case at hand. In *Melcher* the preemptive rights were not a part of an operating agreement dependent upon a lease. The rights in *Melcher* would vest only if a *new* lease was offered. The preemption did not apply to previously leased property but to unleased vertically contiguous property. In *Melcher* only one party held preemptive rights while here the preemptive rights are reciprocal. These rights were not delineated by any time frame; a new lease could have been acquired whether or not there was any production in the upper formation.

In the present case under the terms of the lease when production ceases the lease terminates, the operating agreement is no longer viable and the preemptive rights are extinguished.

The perplexity of the federal courts may arise from certain language in *Melcher* seemingly rejecting an analogous decision from Texas, *Weber v. Texas Co.,* 83 F.2d 807 (5th Cir. 1936) *cert. den.* 299 U.S. 561, 57 S.Ct. 23, 81 L.Ed. 413. The court in *Weber* held a preemptive right of a mineral lessee to purchase lessors' royalty rights was within neither the purpose of, nor the reason for the rule against perpetuities. Acknowledging the fact the preemptive rights in *Weber* (as in the present case) related to the same property, while those in *Melcher* to separate property, this court chose not to base its decision on this factual distinction. It distinguished *Weber* as erroneously applying a widely recognized exception to the rule against perpetuities to the facts therein.

That exception to the rule as stated in *Melcher* and in other treatises is that *when an option to purchase a fee is contained in a lease and is exercisable within the terms of the leasehold, the interest impressed on the property is not subject to the rule against perpetuities.*[4] *Melcher* did not criticize the exception recognized in *Weber*; it simply did not apply it to the *particular facts* of that decision.

█ The Restatement of Property § 395 provides a basis for this exception. It states:

> "When a lease limits in favor of the lessee an option exercisable at a time not more remote than the end of the lessee's term.
>
> (a) to purchase the whole or any part of the leased premises; or
>
> (b) to obtain a new lease or an extension of his former lease,

4. *Melcher v. Camp, supra,* n. 1 at p. 115; Cf., rule against perpetuities additionally is not applicable to conveyance of a fee simple with condition subsequent (conditional fee, possibility of reverter) created in a deed by a preemptive right to repurchase the property. See *Dozier v. Troy Drive-In-Theatres,* 265 Ala. 93, 89 So.2d 537 (1956).

then such option is effective, in accordance with the terms of the limitation, even when it may continue for longer than the maximum period described in § 374." [5]

The rule against perpetuities springs from public policy considerations. These same considerations lead us to adopt this section as applied to preemptive rights included in these operating agreements. This section applies when a preemptive right is *limited* to the duration of the lease.[6]

In the agreement herein involved, it is evident the preemptive right remains viable only as long as the lease itself remains in effect. No perpetuity is created as there is no way the right could continue after termination of the lease. If the lease expires, neither party would have anything to convey under the right of preemption. Accordingly we hold the rule against perpetuities does not apply to preemptive rights created by the oil and gas operating agreements involved in this dispute.

IRWIN, V. C. J., and BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.

LAVENDER, C. J., and WILLIAMS and HODGES, JJ., dissent.

---

**5.** § 374 provides:

The maximum period allowed under the rule against perpetuities is:

(a) lives of persons who are

(i) in being at the commencement of such period, and

(ii) neither so numerous nor so situated that evidence of their deaths is likely to be unreasonably difficult to obtain; and

(b) twenty-one years; and

(c) any period or periods of gestation involved in the situation to which the limitation applies.

**6.** See *Smith v. County of El Paso*, 593 P.2d 979 (Colo.App.1979) cert. den. 1979.